# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# BATESVILLE DIVISION

**DEANNA C. POULETTE**                                          **PLAINTIFF**

**V.**                    **NO. 1:19CV00039 BSM/PSH**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**[1]                           **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Deanna C. Poulette, applied for supplemental security income benefits on June 21, 2016, alleging a disability onset date of June 1, 2014.[2] (Tr. at

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] For supplemental security income benefits, the relevant time-period begins on the date of application. (Tr. at 47).

47). The application was denied initially and upon reconsideration *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Poulette's claim. (Tr. at 62). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Poulette has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Poulette had not engaged in substantial gainful activity since the application date of June 21, 2016. (Tr. at 50). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Poulette had the following severe impairments: degenerative disc disease of the lumbar and cervical spine with radiculopathy, chronic pain, peripheral neuropathy, paresthesia, carpal tunnel syndrome, migraines, obesity, and mental disorders variously diagnosed as PTSD, major depressive disorder, and anxiety. *Id.*

The ALJ found that Ms. Poulette's impairment did not meet or equal a listed impairment. (Tr. at 52). Before proceeding to Step Four, the ALJ determined that Ms. Poulette had the residual functional capacity ("RFC") to perform work at the sedentary level, with limitations. (Tr. at 54). She could occasionally climb stairs and ramps, but never climb ladders or scaffolds; she could occasionally stoop, but never kneel, crouch, or crawl; she could frequently push and pull with arms and reach in

all directions, except she can occasionally reach overhead; she could occasionally push and pull with her legs; she could frequently perform handling/gross and fingering/fine manipulation; she could never lift overhead; she must avoid concentrated exposure to extreme cold, level 5 noise, and vibrations; she must avoid all hazards of heights and machinery; she would need a cane to ambulate to the worksite only; she can understand, remember and carry out simple instructions and repetitive tasks, and is restricted to SVP2 work and below; she could respond appropriately to supervisors and coworkers in a task oriented setting where contact with others, including the public, is infrequent; she can adapt to routine, simple work changes; and, she can perform work at a normal pace of an average worker, however, with no production line work or other work if hourly quotas are required. (Tr. at 54-55).

The ALJ next found that Ms. Poulette was unable to perform any of her past relevant work. (Tr. at 60). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Poulette's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 60-61). Therefore, the ALJ found that Ms. Poulette was not disabled. *Id*.

3

## III. <u>Discussion:</u>

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Ms. Poulette's Arguments on Appeal

Ms. Poulette contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the RFC did not fully incorporate her limitations and that the ALJ did not consider all of her impairments in combination. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Poulette suffered from back and neck pain with radiculopathy and neuropathy. After a cervical fusion in 2015, she felt an improvement in symptoms. (Tr. at 37). At a consultative examination in 2015, she had only mild difficulty in heel-toe walking and tandem walking, and she was able to stand on one foot bilaterally. (Tr. at 618). The consultative examiner found that she could sit for six hours in an eight-hour day and stand or walk for three hours likewise. *Id*.

Ms. Poulette said that oxycodone and hydrocodone helped with her pain, and she experienced 100% improvement with trigger point injections. (Tr. at 511, 636). Moreover, objective testing for her cervical spine showed only mild-to-moderate conditions; a c-spine myelogram showed no instability in February 2017. (Tr. at 887). Her doctor noted that her pain responded adequately to conservative treatment. (Tr. at 674). Lumbar objective tests also showed mild-to-moderate conditions, and a February 2016 lumbar MRI showed no progression of degeneration. (Tr. at 674,

723). She had an improved ability to bend, stand, and walk, and she said in September 2016 that she could play with her dog, watch TV, and do crafts. (Tr. at 636, 838-839). While Ms. Poulette said at the hearing that her condition had worsened to the point that she could hardly do any activities of daily living, her mild conditions and response to treatment do not bear out those statements. Finally, she did not require a TENS unit, attend physical therapy, or pursue other, more aggressive, treatment. No doctor placed any functional restrictions on her.

Ms. Poulette also complained of headaches, but she said that they improved after her neck surgery and neurological work-ups, and CT scans of her head were unremarkable. (Tr. at 57).

While Ms. Poulette alleged disability based on mental impairments, she did not seek regular psychiatric care. She did have a three-day impatient psychiatric hospitalization in August 2018, but her anxiety and mood had improved by her discharge date. (Tr. at 93). Moreover, her mood, affect, and speech were routinely normal. (Tr. at 615-617, 638, 648, 782). The psychological examiner did not find any gross mental functional deficits. (Tr. at 837). She was conversant at the hearing.

The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 456 F.3d 890, 894 (8th Cir. 2006). A diagnosis alone does not infer

6

disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). The ALJ considered all of the impairments listed above and discussed them in his opinion. He also considered Ms. Poulette's obesity, and noted that she had been instructed to lose weight: at the time of the hearing she was not trying to lose weight. (Tr. at 57, 179). *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). The ALJ based his decision on all of the evidence related to Ms. Poulette's multiple impairments. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994)(ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work).

Because Ms. Poulette did show that she was limited by back and neck pain, the ALJ limited her to sedentary work with quite a few postural limitations. Her positive response to medications, the lack of physician-imposed restrictions, and the mild-to-moderate objective test results supported this RFC. An ALJ is only required to include in the RFC limitations that are credibly evidenced in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). The RFC properly captured Ms. Poulette's limitations.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Poulette was not disabled. The ALJ properly considered all impairments, and the RFC incorporated all of Ms. Poulette's limitations. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 9th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE